W. T. SHAVER, Appellant, v. C. HARDIN & SONS *et al.*,.
Appellees.

1.   Corporations: MORTGAGE OF CORPORATE PROPERTY : RATIFICA-
     TION.  The board of directors of a manufacturing corporation,
     which under the articles of incorporation had the management of
     the corporation affairs, by resolution, authorized its president "to
     make such arrangements to procure funds to carry on the work,
     or pay indebtedness as he in his judgment should deem expedient
     and best ;" and giving him full power to act in the absence of a
     meeting of the board.  Nearly three years thereafter the board by
     another resolution authorized the president and secretary to exe-
     cute mortgages upon its goods and merchandise and notes and
     books of account, and upon its real estate to the defendants, as.
     additional security upon the notes it was owing them.  About
     sixty days after the second resolution the president and secretary
     made to defendants, on behalf of the corporation, a promissory
     note for more than five thousand dollars to cover loans made the
     company prior thereto, and to secure the same and other notes.
     executed a mortgage upon the personal property of the corpora-
     tion, and all additions thereto, and about six months after the

said second resolution the president and secretary made to the defendants two other notes amounting to twelve hundred dollars, and, to secure the same and the notes secured by said chattel mortgage, executed a mortgage upon the company's real estate and personal property.    Subsequently, in a resolution passed by the board, both of the above mortgages were recognized, and though not expressly ratified were made paramount to a new mortgage to another creditor which it then authorized.    *Held*, that in view of the action of the board as above stated, and the practice of the president and secretary, the resolution last mentioned should be deemed a ratification of the action of the president and secretary as to the notes and mortgages to the defendants.

2.    ——— : ——— : PAYMENT.    One S., who was the president of the company and manager for the defendant mortgagees, gave his check to the plaintiff for the sum of five thousand dollars ostensibly for the payment of ten thousand dollars of the company's stock, but in reality to conceal from the plaintiff's bookkeeper the character of the transactions between S. and the mortgagees.    On the same day the plaintiff gave his check for the same amount to the said mortgagees, the same being intended merely to cover the check received from S.    *Held*, that in the absence of any agreement to the contrary the latter check could not be regarded as a payment upon the company's indebtedness to the mortgagees.

3.    ——— : COLLATERAL SECURITIES : CONVERSION.    The charge of the conversion of collateral securities by the pledgee will not be sustained where it appears that the indebtedness for which the collateral was deposited has not been paid, nor that any demand for their surrender has been made.

*Appeal from Hardin District Court.*—HON. D. R. HINDMAN, Judge.

TUESDAY, FEBRUARY 10, 1891.

THIS is an action in equity to restrain the foreclosure of certain chattel mortgages.    The material facts are stated in the opinion.    The plaintiff and certain of the defendants appeal.—*Affirmed.*

*Albrook & Hardin,* for appellant.

*H. L. Huff* and *John F. Duncombe,* for appellees.

ROBINSON, J.—For some years prior to July, 1882, the plaintiff had carried on the business of manufacturing wagons, carriages and other articles at Eldora, Iowa.

The defendants, C. Hardin & Sons, were engaged in the banking business at the same place. On March 15, 1878, the plaintiff made to J. D. K. Smith, a member of the firm of C. Hardin & Sons, for its benefit, a promissory note for the sum of twenty-seven hundred dollars, with interest. On March 11, 1880, the plaintiff made to C. Hardin & Sons a promissory note for eleven thousand dollars, and to secure its payment, and for other purposes, executed a chattel mortgage on his stock in trade. On July 8, 1882, the Shaver Wagon Company, of Eldora, was incorporated, and the plaintiff sold and transferred to it his business and the real and personal property used in carrying it on, receiving in exchange stock of the company. On June 12, 1885, the Shaver Wagon Company made to C. Hardin & Sons its promissory note for the sum of fifty-three hundred and eighty-two dollars and ' thirty-five cents, and to secure its payment, and also the payment of the two notes for twenty-seven hundred dollars and eleven thousand dollars, already described, executed its mortgage on all its personal property and on additions which should be made thereto. On October 5, 1885, the Shaver Wagon Company made to C. Hardin & Sons its two notes for six hundred dollars each, and to secure their payment and the payment of the three notes described executed a mortgage upon its real estate and personal property, and upon the personal property it might thereafter acquire in its business. On October 23, 1885, the Shaver Wagon Company made to the plaintiff its two promissory notes, amounting to ten thousand, three hundred and seventy-one dollars and seven cents, and to secure their payment executed a mortgage upon all its personal property, and upon all it might thereafter acquire, subject, however, to a mortgage made by the plaintiff and to the mortgages given by it June 12, 1885, and October 5, 1885.

This action was commenced on November 7, 1885. The defendants, C. Hardin & Sons, had seized the mortgaged property for the purpose of foreclosing their

mortgages to collect the various sums due thereunder, which they allege amounted to fifteen thousand and fifty-nine dollars. The plaintiff claims that the mortgage of June 12, 1885, was merged in that of October 5, 1885 ; that both were executed by certain officers of the company without authority and without consideration ; that C. Hardin & Sons have a first mortgage on real estate of the Shaver Wagon Company of the value of ninety-five hundred dollars, and other property to the amount of sixty-five hundred dollars, and have seized property of the value of forty thousand dollars which they are attempting to sell ; that the mortgage of the plaintiff was canceled by an agreement of the parties in interest at the time he sold his property to the Shaver Wagon Company ; that a large portion of the indebtedness secured by the mortgage of June 12, 1885, has been paid in various ways ; that C. Hardin & Sons at one time received a check for five thousand dollars, which should have been applied on the indebtedness, but was not; that, unless the proposed sales are restrained, the mortgaged property will be wasted. The defendants, C. Hardin & Sons, deny that the mortgage of June 12, 1885, was merged in that of October, 1885 ; deny that these mortgages were executed without consideration and without authority ; deny the alleged cancellation of the indebtedness of the plaintiff when he made his sale to the wagon company ; and deny the alleged misapplication of funds. In a cross-petition the defendants, C. Hardin & Sons, set out their claim against the plaintiff and the Shaver Wagon Company, and make them and numerous other persons parties defendant, and demand judgment against the plaintiff for twelve thousand, nine hundred and sixteen dollars and forty-seven cents, and against the Shaver Wagon Company for fifteen thousand, seven hundred and eighty-four dollars and eighty-three cents, and for attorney's fees and costs. J. D. K. Smith, in an answer to the cross-petition, and by way of counterclaim, alleges that he is the owner of one of the two

notes given to the plaintiff, and secured by the mortgage of October 23, 1885, and demands judgment thereon against the Shaver Wagon Company, and asks the foreclosure of the mortgage. The Chicago Varnish Company and S. D. Kimbark unite in an answer and cross-petition, which shows that the Shaver Wagon Company made to them, on October 29, 1885, certain promissory notes and a mortgage on all its personal property to secure their payment. They demand judgment for the amount of the notes and the foreclosure of the mortgage. Other defendants appeared and filed answers, but their claims do not require special notice.

The district court found that there was due on the twenty-seven-hundred-dollar note the sum of seventeen hundred and ninety-three dollars and eighty-five cents, and on the eleven-thousand-dollar note the sum of thirteen thousand and nine hundred dollars, and that the plaintiff and the Shaver Wagon Company were liable for their payment. It rendered judgment in favor of C. Hardin & Sons, and against the plaintiff and said company, in the sum of fifteen thousand, six hundred and ninety-three dollars and eighty-five cents on account of those two notes. It found that there is due on the fifty-three hundred and eighty-two dollar and thirty-five-cent note the sum of sixteen hundred and thirty-five dollars and thirty-five cents ; and on the six-hundred-dollar notes the sum of thirteen hundred and sixty-six dollars and fifty cents, making an aggregate on the three notes of three thousand and one dollars and eighty-five cents. It rendered judgment for that amount in favor of C. Hardin & Sons and against the Shaver Wagon Company. It found due J. D. K. Smith the sum of seventeen hundred and seventy-two dollars and seventy cents, and rendered judgment in his favor and against the Shaver Wagon Company for that amount. It found due the Chicago Varnish Company the sum of two hundred and ninety-nine dollars and ninety-six cents, for which it rendered judgment against the Shaver Wagon Company. A judgment was also rendered against the same

defendant and in favor of S. D. Kimbark for the sum of sixty dollars and twenty cents. The court also found that the mortgage executed by the plaintiff, March 11, 1880, and the mortgages executed by the Shaver Wagon Company, June 12, 1885, October 5, 1885, and on October 29, 1885, were valid, and it decreed their foreclosure. It was also found that the property included in the chattel mortgages had been placed in the hands of a trustee, named Martin, to sell, and that it had been sold, and the proceeds thereof, amounting to eleven thousand, two hundred and forty-three dollars and sixteen cents, deposited for the use of the parties entitled thereto. It was ordered to be paid to the judgment creditors, to satisfy their judgments, in the order in which we have stated them. The plaintiff, the Shaver Wagon Company, and others appeal.

I. The appellants claim that the note for fifty three hundred and eighty-two dollars and thirty-five cents, the two for six hundred dollars each, and the mortgages given on June 12, 1885, and October 5, 1885, were never authorized by the Shaver Wagon Company. The articles of incorporation of that company provide that its "affairs and business" shall be managed by a board of five directors, and make it the duty of the president to superintend the affairs and business of the corporation, and sign certificates of stock. It was also made the duty of the secretary to sign certificates of stock, and to keep a record of the meetings of stockholders and board of directors, and keep an accurate account of all the transactions of the company. The notes and mortgages in question were made and executed by the president and secretary. On July 17, 1882, the board of directors of the company adopted the following: "Resolved, that the president be authorized to make such arrangements to procure funds to carry on the work or pay indebtedness as he in his judgment shall deem expedient or best; and, in the absence of a meeting of the board of directors, he shall have full power to act in all cases." On April 14,

*1. CORPORATIONS: mortgage of corporate property: ratification.*

1885, the board of directors authorized the president or vice-president and secretary "to execute mortgages upon the goods and merchandise and notes and books of account and upon the real estate to C. Hardin & Sons, as additional security upon the notes we are owing them, being the notes executed to them by W. T. Shaver, and notes executed to them by the company." On October 23, 1885, the board of directors adopted the following: "Resolved, that the president and secretary be, and are hereby, directed to execute notes for fifteen hundred and twelve dollars and fifty-five cents and eighty-eight hundred and fifty-eight dollars and fifty-two cents, and a chattel mortgage to secure the same upon the personal property, notes and accounts of the company, and a real-estate mortgage upon the real estate, to further secure the same for the sums due Mr. W. T. Shaver from the company and the indebtedness by the company in favor of J. D. K. Smith, and assigned to Mr. Shaver, subject, however, to a mortgage made by W. T. Shaver to J. D. K. Smith, March 15, 1878 ; subject, also, to a chattel mortgage made by W. T. Shaver to C. Hardin & Sons, March 11, 1880 ; subject, also, to mortgages and chattel mortgages made by this company to C. Hardin & Sons, June 12, 1885, and October 5, 1885. Resolved, that the president and secretary be, and are hereby, empowered to give mortgages on the personal and real estate of the company, or any other class of security that they may deem necessary to secure other claims against the company." The note for fifty-three hundred and eighty-two dollars and thirty-five cents was given on account of several loans made to the company during the year 1884, and for interest on them, and for interest on the notes made by the plaintiff for twenty-seven hundred dollars, and eleven thousand dollars. All the consideration of the note for fifty-three hundred and eighty-two dollars and thirty-five cents, excepting a small amount of interest, had accrued prior to the fourteenth day of April, 1885. The notes for six hundred dollars each were for a loan which was placed to the credit of the

company, and checked out by it in the ordinary course of business.

It is apparent that the business of the company was conducted on the theory that the resolution of July, 1882, authorized the president and secretary to procure funds required in the business, and to make the notes of the company for that purpose. Whether the board of directors could delegate to the president and secretary for an indefinite time the power to execute contracts in the name of the company, is a question which we need not determine. They had the right to require the officer named to execute specific contracts, as to give notes and mortgages for specified purposes, and, having that right, they were authorized to ratify the acts of such officers in giving notes and mortgages for such purposes. It is said that the action taken by the board, April 14, 1885, did not authorize the president and secretary to give a new note for the indebtedness nearly two months afterwards, and execute a chattel mortgage to secure its payment. The giving of a new note was not mentioned, it is true, but the validity of the indebtedness for which it was given is not questioned. The time within which the mortgages should be given is not specified. It may be that between April 14, 1885, and the twelfth day of the next June some property had been acquired by the company upon which the mortgage was given, but it does not appear to have been the intent of the board to mortgage only the property it had on the date first named, but rather to pledge the property of the company for the payment of its debts. There is nothing to show that the mortgage was not executed within a reasonable time. The giving of the two six-hundred-dollar notes was not specially authorized by the board. But the resolution of October 23, 1885, referred to the mortgages of June 12 and October 5 of that year, and made them paramount to a new mortgage, which it authorized. In view of the preceding actions of the board, which we have set out, and the practice of the president and secretary,

of which the board necessarily had knowledge, we think the resolution of October 23 should be held to ratify the mortgages and the notes therein specified. It is true the notes secured by the mortgages were not mentioned in the resolution, but it is common for the proceedings of such board to be expressed in language which is not technically full and accurate ; but, where the intent of the proceeding is made reasonably certain, it should be given effect. In this case the purpose of the mortgages specified was to secure the payment of the notes therein described. Having knowledge of the mortgages, the board, we must presume, had knowledge of all the claims which they were designed to secure, and the record shows nothing to the contrary.

II. J. D. K. Smith was the managing member of the firm of C. Hardin & Sons, and from July, 1882, was

2. —:—:     president of the Shaver Wagon Company.
payment.     On the seventeenth day of the month named he gave to plaintiff a check for five thousand dollars. Smith states that it was given nominally for ten thousand dollars in stock of the company, which was placed in his name, but was really designed as a loan, which was repaid by the plaintiff on the day it was made ; and that it was designed to prevent the bookkeeper of the plaintiff from having an exact knowledge of the transactions between himself and C. Hardin & Sons in regard to collateral securities. The appellants contend that the five-thousand-dollar check of Smith should be applied as a credit on the indebtedness of the plaintiff represented by the twenty-seven-hundred-dollar and eleven-thousand-dollar notes. It was placed to the credit of the plaintiff on the books of C. Hardin & Sons, but was immediately checked out, according to the agreement by which it was given. The giving of the check by Smith, and the placing of it to the credit of the plaintiff, and the giving of a check for the amount of the credit by the plaintiff, were all parts of one transaction. The plaintiff testifies as a witness, but does not deny the claim of Smith in regard to it. Although

the transaction does not seem to have been a meritorious one, yet the plaintiff cannot complain of it; and it does not seem to have prejudiced any of the appellants. As the parties to it did not agree that the check of Smith should be applied on the indebtedness of the plaintiff in suit, we will not so apply it.

III. When the Shaver Wagon Company was incorporated certificates for capital stock to the amount of one hundred thousand dollars were issued. There is conflict in the testimony as to the owners of the stock. C. Hardin & Sons admit that nearly all of it stood on the books of the company in their name or in the names of other persons for their benefit, and they claim that it was so held as collateral security on account of much, if not all, of the indebtedness for which they seek to recover in this action. They also admit that they have transferred a portion of the stock so held, but only for the trust purposes, and that at least sixty thousand dollars of the stock is now held for the purposes stated by other parties. The appellants contend that the stock issued to C. Hardin & Sons was to be held in trust for the benefit of the company, and that by transferring and failing to account for it that firm have converted it to their own use, and are liable for its value, which is presumed to be the par value. There is nothing in the numerous and voluminous pleadings to justify such a claim. They do not allege such a conversion. The stock was delivered to C. Hardin & Sons for a proper purpose, and for that it is still held. Their claims have not been paid, and no demand has been made for the surrender of the stock. The evidence wholly fails to show a conversion.

*3. ——: collateral securities: conversion.*

IV. What we have said disposes of the controlling questions in the case. Many of the issues presented by the pleadings seem to have been abandoned by appellants. Others have no support in the evidence.

We conclude that appellants have no sufficient reason to complain of the judgment of the district court. It is, therefore, AFFIRMED.